**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2010-CT-00646-SCT**

*HOWARD WILSON CARNEY, III*

*v.*

*ANDREA LEIGH BELL CARNEY*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2010 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | J. MACK VARNER |
| | CLIFFORD C. WHITNEY, III |
| | PENNY B. LAWSON |
| ATTORNEY FOR APPELLEE: | TRAVIS T. VANCE, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART AND THE CASE IS REMANDED - 05/09/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.    Howard Carney III and Andrea Leigh Bell Carney obtained a divorce on the ground of irreconcilable differences in the Warren County Chancery Court. They asked the chancery court to determine child support, alimony, equitable distribution of assets, and attorney's fees. The chancery court determined child support, divided the marital estate, considered alimony but declined to award it, and ordered Howard to pay $5,000 toward Andrea's attorney's fees. Howard appealed and the Court of Appeals affirmed. *Carney v. Carney*,

___ So. 3d ___, 2012 WL 1922752 (Miss. Ct. App., May 29, 2012). Howard filed a petition for writ of certiorari, claiming that the Court of Appeals erred in affirming the chancery court judgment because the chancery court manifestly (1) failed to divide the marital estate equitably and (2) erred by listing his unvalued social security benefits under his share of the equitable distribution. We agree with Howard as to issue one; thus, we reverse and remand on this issue. We affirm the Court of Appeals and the chancery court on the second issue.

## FACTS AND PROCEDURAL HISTORY[1]

¶2. Andrea and Howard were married on November 20, 1998, and separated on November 26, 2008. Two children were born of their marriage, Amanda Leigh Carney, born in June 1999, and Katherine Emily Carney, born in June 2006.

¶3. In December 2008, Andrea filed a complaint for divorce from Howard on the grounds of habitual cruel and inhuman treatment and/or irreconcilable differences. In September 2009, Andrea filed an amended complaint for divorce on the grounds of adultery, habitual cruel and inhuman treatment, and/or irreconcilable differences. Howard thereafter filed a counter-complaint for divorce on the grounds of uncondoned adultery, habitual cruel and inhuman treatment, and/or irreconcilable differences. In March 2009, the chancery court entered a temporary order, granting Andrea temporary custody of the two children of the marriage and child support and temporary maintenance of $2,000 per month. On January 13, 2010, the parties filed a consent withdrawing fault grounds to divorce on the ground of

---

[1] The facts of this case are drawn mostly from the Court of Appeals' opinion. *Carney*, ___ So. 3d ___, 2012 WL 1922752, at *1-2.

2

irreconcilable differences. The parties asked the chancellor to determine issues of child support, alimony, equitable distribution of assets, and attorney's fees.

¶4.    On March 19, 2010, the chancery court entered a memorandum opinion and final judgment of divorce based on irreconcilable differences. The chancellor awarded Andrea full use, title, and possession of the marital home, to include 100 percent of the equity in the home.[2]

---

[2] Applying the factors from ***Ferguson v. Ferguson***, 639 So. 2d 921 (Miss. 1994), the chancellor divided the assets and debts as follows:

Andrea was awarded the following marital assets:

> Marital Home: $186,052.57 in equity
> Marital Household Furnishings: $5,175.00
> 2002 Toyota Sequoia: $7,170.00
> TSB Checking: $53.00
> RHB Checking: $800.00
> DOC–CU Savings: $800.00
> State of LA Retirement: $24,000.00
>
> Total: $224,050.57

Andrea was required to pay the following debts:

> First Mortgage with Tensas State Bank: $64,399.29
> Capital One: $2,307.04
> HSBC: $186.80
>
> Total: $66,893.13

Howard was awarded the following assets:

> 2005 Chevrolet Truck: $327.80 in equity
> 2007 Travel Trailer: $3,677.12 in equity
> Social Security Benefits: Actual Value Unknown
> TSB Checking: $875.21
> TSB Savings: $43.52

¶5.    The marital home, known as the "Bell Property," was the home of Andrea's father and grandfather from 1937 until the home was purchased by her sister, Patricia Barnes. In early 2004, Patricia met an untimely death, and her husband, Jason Barnes, placed the house on the market shortly thereafter. Andrea and Howard wanted to purchase the home, but they could not obtain the proper financing. In an effort to keep the home in the family, Debra and Bob Bayler ("the Baylers"), another sister of Andrea's, and Andrea's brother-in-law, agreed to purchase the home.

¶6.    On March 19, 2004, the Baylers purchased the Bell family home for $279,900. Andrea and Howard entered into a rental agreement with the Baylers whereby they would rent the home from the Baylers until they could secure financing to purchase it themselves, which began on April 6, 2004.

¶7.    At the time of her death, Patricia left Andrea a $175,000 life insurance policy. On May 14, 2004, Andrea paid the Baylers $165,000 from proceeds of the life insurance policy

---

401K: $7,279.50
Tools: $1,250.00

Total: $13, 453.15

Howard was ordered to pay the following debts:

2005 Chevrolet Truck: $10,712.20
2007 Travel Trailer: $12,712.88
Jon Barry & Assoc.: $551.42
Second Mortgage with Tensas State Bank: $3,348.14
Capital One: $2,765.65
Orchard Bank: $1,765.00

Total: $31,855.29

4

as a down payment on the home. The Baylers financed the remaining purchase price with River Hills Bank.

¶8. On May 8, 2006, Andrea and Howard borrowed $70,000 from Tensas State Bank as a first mortgage. Of the $70,000 loan, they used $54,102.13 to pay off the balance on the loan with River Hills Bank. The remaining $14,925.87 was placed in their joint account. In addition, on May 8, 2006, a settlement statement was executed between Andrea, Howard, and the Baylers, and a warranty deed was executed conveying the property to Andrea.

¶9. On February 28, 2007, Andrea and Howard obtained a second mortgage on the home for $10,030 to pay outstanding bills. On May 28, 2009, the property appraised for approximately $253,800. During divorce proceedings, the chancellor found that the first mortgage had a remaining balance of $64,399.29, and the second mortgage had a remaining balance of $3,348.14, at the time of the divorce. Taking the 2009 appraisal value of $253,800, minus the balances of the first and second mortgages at the time of the divorce (totaling $67,747.43), the chancellor determined that the home had equity in the amount of $186,052.57, which was awarded to Andrea in full.

¶10. In sum, the chancellor determined that the net value of the marital estate was, after considering marital debt, $237,503.72. The chancellor awarded Andrea $224,050.57 (94.3%) of the estate and Howard, $13,453.13 (5.7%).

## STANDARD OF REVIEW

¶11. Our scope of review in domestic-relations matters is limited. *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994). The appellate court "will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous

5

legal standard was applied." *Id*. (citing ***Bell v. Parker***, 563 So. 2d 594, 596-597 (Miss. 1990)). "[O]n appeal[,] this Court is required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." *Id.* (quoting ***Newsome v. Newsome***, 557 So. 2d 511, 514 (Miss. 1990)).

## DISCUSSION

### I.     Whether the chancellor failed to divide the marital estate equitably.

¶12.    The chancellor found the "Bell Property" was marital property under the commingling-of-assets and marital-use doctrines. ***Hemsley v. Hemsley***, 639 So. 2d 909 (Miss. 1994). This finding was made on the basis that Andrea commingled money she received as a beneficiary of her sister's life insurance policy in acquiring the property and used the property jointly with Howard as their marital home. On this basis, the chancellor found that the home was a marital asset. But the chancellor did not allot Howard any share in the home's equity. This created a significant disparity in the division of the marital estate. Further, by absolving Andrea from obligations on the second mortgage's remaining balance and assigning the balance to Howard, the chancellor's division resulted in even a greater disparity than that indicated in the above fact portion of this opinion. Technically, since this debt followed Howard, Andrea was awarded $189,400.71 in equity, not $186,052.57.

¶13.    In dividing the marital estate, the chancellor conducted a thorough ***Ferguson*** analysis for the record. But we can find no explanation and/or justification therein for the disparity that resulted in the marital-estate division. We recognize that the chancellor noted that, "It is unfortunate that the funds provided to Mrs. Carney from her deceased sister were used in a manner that requires the court to determine that they were co-mingled [sic]." And it

6

appears to this Court that the chancellor, perhaps unintentionally, but nonetheless ultimately, treated those funds as nonmarital. This was manifest error. Having found that those funds were commingled with the marital estate, the chancellor was required to treat those funds as marital and to distribute and/or consider them equitably under the *Ferguson* factors. *See Johnson v. Johnson*, 650 So. 2d 1281, 1286 (Miss. 1994) (Court found that, by allowing nonmarital-inherited funds to be used to benefit the entire family, spouse converted those nonmarital assets into marital assets; thus, those assets were subject to equitable distribution); *cf. Singley v. Singley*, 846 So. 2d 1004, 1011-12 (Miss. 2002) (finding that, although the chancery court correctly determined that a $70,000 inheritance was commingled and became a part of the marital estate, the chancery court apparently failed to realize that it could adjust the *Ferguson* distribution because of the factors surrounding the source and application of the $70,000); *see also Gutierrez v. Bucci*, 827 So. 2d 27, 39 (Miss. 2002) (finding no error in chancery court's award of $5,000 equity in property to husband in light of wife's dissipation of assets).

¶14. Because Mississippi is not a community property state, the chancellor was not required to divide the property equally -- only equitably. *Rives v. Rives*, 416 So. 2d 653, 657 (Miss. 1982). And we iterate that awarding 100 percent equity in a marital asset to one party is not error per se. But, in this instance, based on the record before this Court, we are unable to ascertain why the chancery court awarded the entire equity of the marital home solely to Andrea, without awarding Howard some other equitable share in the marital estate

7

or equitable relief from the marital debt. Accordingly, we reverse and remand this matter for further proceedings consistent with this opinion.[3]

## II. Whether the chancellor erred in considering Howard's unvalued social security benefits as part of his equitable share.

¶15. On appeal, Howard argues that *Ferguson* requires the chancellor to value assets prior to distribution. *Ferguson*, 639 So. 2d at 928. Relying on *Scott v. Scott*, 835 So. 2d 82, 87 (Miss. Ct. App. 2002), Howard contends the failure to do so is reversible error. This Court finds, however, that the principles in *Scott*, relied on by Howard, are inapplicable to valuation of social security benefits in this case. At the time of Andrea's and Howard's divorce, the chancellor would not have been able to value these future benefits, unlike the chancellor's complete failure to value assets in *Scott*, where means of valuation were readily available. *See id.* (where the chancellor did not value two vehicles and used a thirty-year old value of the marital home for distribution). There is no caselaw to support Howard's contention that all assets must or *can* be valued prior to equitable distribution where no means of valuation exists. This is especially true in Mississippi, since it isnot a community property state. Nevertheless, we agree with the Court of Appeals' holding that, even if the chancellor erred by distributing Howard's benefits to him despite their unknown value, the error was harmless because no monetary amount was awarded. *Carney v. Carney*, 2012 WL

---

[3] We note also that Andrea was awarded attorney's fees based on "the financial conditions of the parties." The record does not support this finding. Howard, however, did not make this an issue on appeal; thus, we do not address it further. But, since we are remanding for further proceedings, any additional award for attorney's fees must be accompanied by an analysis as prescribed by this Court in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

1922752, at *6.  We find the second issue on appeal meritless and affirm the Court of Appeals' holding as well as the judgment of the chancery court on this issue.

## CONCLUSION

¶16.   We find that the chancellor manifestly erred by failing to divide equitably the marital estate.  Accordingly, we reverse the Court of Appeals' holding affirming the chancellor's distribution, reverse the chancery court's judgment as to this issue and remand this matter for further proceedings consistent with this opinion.  We affirm the Court of Appeals and the trial court on the second issue, whether the chancellor erred in considering Howard's unvalued social security benefits as part of his equitable share.

¶17.   **AFFIRMED IN PART, REVERSED IN PART AND THE CASE IS REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR.**