# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00230-COA

LISA COLLINS                                                                          APPELLANT

v.

MISSISSIPPI DEPARTMENT OF HUMAN                                      APPELLEE
SERVICES

DATE OF JUDGMENT:              12/09/2015
TRIAL JUDGE:                   HON. C. MICHAEL MALSKI
COURT FROM WHICH APPEALED:     PONTOTOC COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        DALTON CLINTON MIDDLETON
ATTORNEYS FOR APPELLEE:        JEFF SKINNER
                               JOSHUA LEE EURE
                               LEWIS CLARK HUNTER
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       ORDERED APPELLANT TO PAY CHILD
                               SUPPORT
DISPOSITION:                   AFFIRMED - 06/13/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1.     Lisa Collins[1] appeals the judgment of the Pontotoc County Chancery Court requiring

that she pay child support for her son, Adam Summers, a minor.  The Mississippi Department

of Human Services (MDHS) initiated an action against Lisa seeking child-support payments

for the support of Lisa's son, Adam.  Lisa filed an answer denying that she should have to

pay child support and also filed a cross-complaint for emancipation, requesting that the

_____

        [1] Due to the nature of this case, we have substituted fictitious names for individuals'
real names.

chancellor emancipate Adam.

¶2.    After a hearing, the chancellor entered an order finding that Lisa failed to support Adam emotionally or financially, and that Lisa and Adam had contributed to the erosion of the parent-child relationship equally.  The chancellor ordered Lisa "to pay 14% of her adjusted gross income as child support, retroactive to November 20, 2014, the day of the filing of the complaint."

¶3.    Lisa now appeals the chancellor's order, arguing that:  (1) the chancellor erred in requiring Lisa to pay child support for Adam, and (2) the chancellor's factual findings are not supported by substantial evidence.  Because we find that substantial credible evidence supports the chancellor's judgment and findings, we affirm.[2]

**FACTS**

¶4.    Adam was born October 17, 1997, to Lisa and her then-husband, Albert Ralph Summers (Ralph).  Lisa and Ralph separated when Adam was eighteen months old and eventually divorced.  After the divorce, Adam lived with Lisa in West Memphis, Arkansas, until he was eight years old.

¶5.    Adam and Lisa's second husband, Arnold Owens, had a difficult relationship, resulting in Adam moving to Joiner, Arkansas, to live with his father, Ralph.  Ralph died when Adam was thirteen years old.[3]  Adam then moved in with Lisa and her third husband, Geoffrey Collins.  Over the next three years, Adam moved from relative to relative due to his

---

[2] *See Lewis v. Pagel*, 172 So. 3d 162, 172 (¶16) (Miss. 2015).

[3] The record reflects that Ralph's wife, Jane Summers, possessed legal guardianship of Adam.

behavioral issues.

¶6. The record reflects that in July 2013, Adam visited Lisa and Geoffrey. During the visit, a fight ensued between Geoffrey and Adam, resulting in Adam choking Geoffrey, Geoffrey biting Adam, and Lisa being thrown down. After this incident, Adam and Lisa had no further contact with one another.

¶7. At the age of sixteen, Adam eventually moved in with his paternal uncle, Victor Summers, and Victor's wife, Debbie. Victor and Debbie were appointed as co-guardians of Adam on September 9, 2014. After Adam exhibited inappropriate behavior, including pornography use and both oral sex and vaginal intercourse with dogs, Victor and Debbie entered him into a program for emotionally disturbed children in Arlington, Tennessee.

¶8. On November 20, 2014, the MDHS initiated an action against Lisa to establish a child-support order for Adam due to Victor being a recipient of services under Title IV-D of the Social Security Act for the support of Adam. Lisa filed an answer denying that she should have to pay child support because Adam abandoned his relationship with Lisa, made serious allegations against her, and refuses to see her. Lisa also filed a counterclaim for emancipation, requesting that the chancellor emancipate Adam.

¶9. At a hearing held on December 1, 2015, the chancellor heard testimony from Lisa, Victor, and Debbie. The chancellor also admitted into evidence Adam's deposition testimony, which was taken in connection with the litigation.

¶10. The chancellor entered a final judgment on January 13, 2016.[4] In the final judgment,

_____

[4] The record reflects that the chancellor signed the final judgment on December 9, 2015, but he failed to file the final judgment until January 13, 2016. As a result, Lisa's

3

the chancellor dismissed Lisa's counterclaim for emancipation after finding that Adam failed to meet the requirements for emancipation provided by Mississippi Code Annotated section 93-11-65(8).[5]

¶11.    The chancellor also addressed Lisa's argument that she should not pay child support because Adam has abandoned the parent-child relationship and refused to see her. The chancellor cited to *Caldwell v. Caldwell*, 579 So. 2d 543 (Miss. 1991), and stated that "the Mississippi Supreme Court declared that a parent's responsibility to support a child is not based upon the amount of love shown by a child. However, there are circumstances where a child can forfeit the right to support." The chancellor discussed *Hambrick v. Prestwood*, 382 So. 2d 474, 477 (Miss. 1980), and *Roberts v. Brown*, 805 So. 2d 649, 653 (Miss. Ct. App. 2002), two cases wherein the supreme court and this Court both held that the child's behavior and actions resulted in the forfeiture of support. The chancellor ultimately distinguished the facts of those cases from the facts of the present case, explaining:

> While Adam's behavior is inappropriate to the point of being disgusting, that behavior, in the court's opinion, stems from emotional and psychological problems. Stated differently, Adam is mentally ill, an illness he is attempting to address in an institutional environment. Additionally, the court would note that Lisa testified that she did not want a relationship with Adam.
>
> Lisa had little contact with Adam after he came to live with her when he was thirteen except for one six month period and no contact after he was sixteen. She did not support him emotionally or financially during this time. Lisa, as much as Adam, in the Court's opinion, contributed to the erosion of the relationship. Under these circumstances the Court is disinclined to relieve Lisa

February 12, 2016 notice of appeal was timely filed.

[5] In his judgment, the chancellor cited to the version of Mississippi Code Annotated section 93-11-65(8)(a) in effect prior to July 1, 2008.

of her obligation to support Adam.

¶12.    The chancellor ultimately ordered Lisa to pay fourteen percent of her adjusted gross income as child support, retroactive to November 20, 2014, the day of MDHS's filing of the complaint. The chancellor further ordered the attorneys for the parties to attempt to agree on an exact figure.

¶13.    Lisa now appeals the chancellor's final judgment.

## STANDARD OF REVIEW

¶14.    The Mississippi Supreme Court has repeatedly held that an appellate court "will not disturb the findings of a chancellor in domestic relations matters unless the chancellor's decision was manifestly wrong [or] clearly erroneous, or [the chancellor] applied an erroneous legal standard." *Lewis*, 172 So. 3d at 172 (¶16) (citing *Carney v. Carney*, 112 So. 3d 435, 437-38 (¶11) (Miss. 2013)). The supreme court explained that "[c]hancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Id*.

## DISCUSSION

¶15.    Lisa argues that the chancellor applied an erroneous legal standard in determining that Lisa and Adam were equally responsible for the breakdown of the parent-child relationship. As a result of these errors, Lisa submits that the chancellor's judgment ordering Lisa to pay child support should be reversed.

¶16.    Specifically, Lisa asserts that the chancellor failed to consider the proximate cause of

the breakdown of the parent-child relationship, citing to *Lowrey v. Simmons*, 186 So. 3d 907, 914 (¶¶17, 20) (Miss. Ct. App. 2015), in support of her claim. Lisa submits that the chancellor heard deposition testimony from Adam regarding the extreme behavior he exhibited despite years of counseling. Lisa also submits that she provided testimony detailing Adam's physical and verbal outbursts directed toward her. Lisa claims that Adam's pornography use fits the criteria for legal cause, and she argues that it is reasonably expected or foreseeable that Adam's access to pornography would lead to a sexual deviance that resulted in the breakdown of almost all of his relationships.

¶17. MDHS, however, argues that *Lowrey v. Simmons* failed to create a duty upon the trial court to always perform a proximate-cause determination in deciding whether to terminate an obligation of support upon the deterioration of the parent-child relationship. MDHS submits that the record also indicates that Lisa has not provided financial support for Adam for several years, despite admitting at trial that she was unaware of some of Adam's more perverse behavior toward animals until it was revealed through Adam's deposition testimony. MDHS therefore asserts that Lisa cannot use Adam's perverse behavior as an excuse for her refusing to provide support to him.

¶18. Lisa also argues that the chancellor's findings of fact are not substantially supported by the entire court record, and are manifestly wrong and clearly erroneous. Lisa claims that although the chancellor stated that he would read Adam's deposition prior to entering his judgment on the matter, the chancellor did not appear to be aware of Adam's extensive mental-health history.

¶19. Regarding an award of child support, "this Court respects a chancellor's findings of fact if they are supported by credible evidence and not manifestly wrong." *Lowrey v. Lowrey*, 25 So. 3d 274, 293 (¶46) (Miss. 2009) (citing *R.K. v. J.K.*, 946 So. 2d 764, 772 (¶17) (Miss. 2007)). Mississippi Code Annotated section 43-19-101(1) (Rev. 2015) sets forth the child-support guidelines and provides that the "guidelines shall be a rebuttable presumption . . . regarding the awarding or modifying of child support awards[.]" On appeal, we "will not affirm a child-support award that deviates from the statutory guidelines unless the chancellor overcomes the rebuttable presumption by making an on-the-record finding that it would be unjust or inappropriate to apply the guidelines in the instant case." *Lowrey v. Lowrey*, 25 So. 3d at 293 (¶46) (citing *Chesney v. Chesney*, 910 So. 2d 1057, 1061 (¶7) (Miss. 2005)) (internal quotation marks omitted).

¶20. In addressing Lisa's argument that we should reverse the chancellor's award of child support since Adam's behavior caused the breakdown of the parent-child relationship, we recognize that "a child generally will not forfeit support from a noncustodial parent unless his or her actions toward the parent are clear and extreme." *Lowrey v. Simmons*, 186 So. 3d at 914 (¶23) (citing *Caldwell v. Caldwell*, 579 So. 2d 543, 548 (Miss. 1991)) (internal quotation marks omitted). In *Caldwell*, 579 So. 2d at 548, the noncustodial parent argued that his teenage child had "totally abandoned the [parent-child] relationship, and so dislikes [the noncustodial parent], that [the noncustodial parent] should no longer have to pay any support[.]" The supreme court rejected this argument and, citing *Holston v. Holston*, 473 A.2d 459 (Md. Ct. Spec. App. 1984) (superceded by statute in part), explained:

7

The amount of money that the noncustodial parent is required to pay for the support of his minor children should not be determined by the amount of love the children show toward that parent. The proper inquiry, as we have often stated, is what is in the best interest of the child. In reaching that conclusion, the chancellor must balance the needs of the child against the parent's financial ability to meet those needs.

*Caldwell*, 579 So. 2d at 548. The supreme court clarified that "[i]t is not suggested that there could never be a situation where a minor child as young as fifteen might by his actions forfeit his support from a non-custodial parent[, but] [t]hose actions would have to be clear and extreme[.]" *Id*. The *Caldwell* court determined that the facts before it failed to constitute clear and extreme actions on behalf of the child which would warrant forfeiting child support, recognizing that the child "sought professional counseling and advice to deal with his feelings toward [the noncustodial parent] and openly talks of trying to improve the relationship." *Id*.

¶21. However, in *Hambrick,* 382 So. 2d at 478, the supreme court reversed the chancellor's judgment requiring the noncustodial parent to pay for his college-age child's college expenses or further child support. The supreme court based its decision on its findings that the child,

by her own testimony, has not had any contact with [the noncustodial parent] for six or seven years and does not want to have any contact with him. She says that she dislikes him, categorizing it close to "hate[.]" . . . From the time that she was twelve years of age, [the child] has shown no love, affection, appreciation or consideration for [the noncustodial parent].

*Id*. at 477. The supreme court determined that "there is nothing in this record that would justify [the child's] attitude toward [the noncustodial parent,]" and thus held that based on "the unfortunate circumstances of this case, we are of the opinion that the [noncustodial

8

parent] should be relieved of any further obligations to support or educate [the child]." *Id*.

¶22.   In *Lowrey v. Lowery*, 25 So. 3d at 294 (¶48), the chancellor deviated from the statutory guidelines by ordering the noncustodial parent to pay less support than the required statutory amount.  The chancellor based this deviation on the fact that two of the children were estranged from the noncustodial parent. *Id*.  Upon review, the supreme court found that all three of the children were estranged from the noncustodial parent, "having made it clear that they cast their lot with their father, the primary caregiver." *Id*.  The supreme court reversed and remanded the chancellor's child-support award, explaining that "[e]strangement is not a basis for deviation from statutory child-support guidelines and is not an excuse for failing to pay child support." *Id*.

¶23.   In the more recent case of *Lowrey v. Simmons*, 186 So. 3d at 914 (¶20), the chancellor suspended and terminated the noncustodial parent's support obligations, including the obligation to pay college expenses, after determining that:  (1) the noncustodial parent "was the proximate and primary cause of the erosion of his relationship with his daughter," and (2) the daughter "ha[d] exacerbated this erosion by her own deep-seated antipathy toward [the noncustodial parent]."  The chancellor thus explained that he based his decision to terminate the support obligations on a "'substantial and material change in circumstance'—the erosion of the parent-child relationship and failure to reconcile[.]" *Id*. at 916 (¶25).  In reviewing the chancellor's decision, this Court acknowledged the standard set forth in *Hambrick*, but clarified that "[a]lthough the *Hambrick* standard is by no means a bright-line rule, it has never been applied to terminate a parent's support obligations in a

9

case such as this, where the chancellor has found, with substantial support in the record, that *the parent* is the primary cause of the erosion of the parent-child relationship[.]" *Id*. This Court thus held that "[w]here a [noncustodial parent's] own neglect is the proximate cause of the erosion of his relationship with [the] child, the child's resistance to belated efforts to reconcile will not relieve the [noncustodial parent] of obligations of support[,]" and accordingly reversed the chancellor's decision to terminate the noncustodial parent's child-support obligation. *Id*. at 917 (¶26).

¶24.    In the case before us, the chancellor distinguished the facts of *Hambrick*, explaining that in *Hambrick*, the child was college-aged, had her own income, and would not be destitute without the noncustodial parent's support. At the time of the chancellor's judgment, Adam was eighteen years old, but still a resident at a school for emotionally disturbed children.

¶25.    In the instant case, the chancellor also made the following findings of fact after listening to testimony from Lisa, Victor, and Debbie, and after reviewing Adam's deposition testimony:

> Lisa testified that she had no relationship with Adam because of his attitude and his numerous emotional problems. She feels he is a danger to himself and to her and her husband. She testified that she is not willing to have a relationship with him and feels he does not want one with her. The Court would note, however, that Debbie . . . testified that Adam wanted a relationship with his mother but did not know how to develop one and had cried for hours about this.
>
> The Court is reluctant to catalogue in a written opinion all of Adam's inappropriate behaviors. Some, like calling her a whore, abusing animals, or fighting with her husband, were known to Lisa. Others were learned from Adam's deposition which was taken in connection with this litigation. These

10

include making allegations against Arnold and [Lisa], attempted sexual intercourse with a dog, and watching pornography, including bestiality. Suffice it to say that Adam is deeply troubled emotionally.

. . . .

Lisa had little contact with Adam after he came to live with her when he was thirteen except for one six month period and no contact after he was sixteen. She did not support him emotionally or financially during this time.

¶26. The chancellor observed that Adam exhibited inappropriate behavior "to the point of being disgusting," but he opined that Adam's behavior stemmed "from emotional and psychological problems" and that "Adam is mentally ill." The chancellor also acknowledged that Lisa testified that she did not want a relationship with Adam.

¶27. The chancellor ultimately found that "Lisa, as much as Adam, in the Court's opinion, contributed to the erosion of the relationship. Under these circumstances, the court is disinclined to relieve Lisa of her obligation to support Adam." The chancellor explained that although "[t]he court cannot force parents to be parents, . . . it can refuse to excuse parents from their financial responsibility to support, even when emotional support is lacking." The chancellor recognized that "[a]ssuming responsibility may be difficult, especially when a child is like Adam," but stated that he could not "condone transferring responsibility to the [S]tate simply because [Adam] has become a burden."

¶28. Based on our review of the applicable precedent and the facts herein, we find the chancellor's determination that both Lisa and Adam contributed to the erosion of the parent-child relationship is supported by substantial credible evidence in the record. *Lowrey v. Lowrey*, 25 So. 3d at 293 (¶46). Similarly, we find that the chancellor's findings of fact are

also supported by substantial credible evidence in the record. *Id.* Despite Lisa's assertion, the chancellor's judgment reflects that he possessed an awareness of Adam's extensive mental-health issues and history. As a result, we find no error in the chancellor's judgment ordering Lisa to pay child support. We further find that the chancellor's award of child support was within the statutory guidelines set forth by section 43-19-101(1).

¶29. **THE JUDGMENT OF THE PONTOTOC COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**