1 .WILLIAM H. BYRNES, III, Chief Judge.
The State requests a review of the trial court’s ruling that granted the defendants Kentrell Hickerson and Brandon Hamilton’s motion to suppress the evidence. The stay order is rescinded. We reverse and remand.
At the motion hearing on October 1, 2002, Officer Kermanshiah Perkins testified that he and his partner, Officer Edmond Riley, were on routine patrol in the Calliope Housing Development, in the rear driveway in the 3500 block of Thalia Street on April 17, 2002.[1] The officers saw two subjects (not the defendants) engaging in a hand-to-hand drug transaction. When the officers exited the police car, the subjects ran into the courtyard area, and the officers chased them but the subjects disappeared.
During that time, when the officers entered the courtyard, Officer Perkins testified that: “about a second or two later, we heard maybe 40 to 50 shots ring out.” The shots were coming from South Galvez Street. Officer Perkins was wearing a uniform. The defendants were about 30 feet away when the shooting took place. The officer saw no one else in the courtyard. The defendants turned to hflee to the courtyard area before they saw the police. The officer stated: “When they decided to retreat, they ran directly towards us.” Officer Perkins saw both defendants fire guns. The officer related: *24 “They were firing straight across Galvez, not up in the air.” Officer Perkins testified that when the defendants “notice[d] that we were police, they raised their guns and fired more shots towards us, at which time we retreated.”
The officers did not chase the defendants but called on the radio for additional units. In approximately a minute, 20 or 30 officers arrived on the scene. Officer Perkins stated:
We set up a perimeter and started searching buildings and hallways in the area .... we got K-9. We got Crime Lab. And they had units going up and down the buildings into the hallways, into the stair wells, at which time my partner went upstairs at 1408 South Miro, the building, and a concerned citizen flagged him down.
Officer Perkins did not directly see the tipster but learned about the concerned citizen who gave the tip of the address of the apartment where the perpetrators were. Although Officer Perkins was downstairs, he learned that the police entered 1408 South Miro,[2] approximately 30 minutes after the request for additional units. Shortly thereafter, Officer Perkins went into the apartment. The officer stated: “once I entered the house, I immediately identified them [the defendants].”
When the State requested that the motion be held open for the testimony of Sergeant Duane Carkum and Officer Riley, the trial court set a hearing on October 10, 2002. On that date, the officers did not appear. The prosecutor explained that Duane Corkum no longer worked for the New Orleans Police Department. Officer Riley was served, but he worked on the night watch and had not been reached. |oThe trial court stated that it would not hold the hearing open where Officer Riley did not appear at the last hearing or the current hearing although he was subpoenaed for both.
The trial court granted the defendants’ motion to suppress. The trial court found no probable cause for the violation of a felon with a firearm with respect to both defendants. The trial court found probable cause for aggravated assault rather than attempted first-degree murder of a police officer.
The trial court stated:
Well, I’m basically basing it on the testimony of the last police officer. I don’t think any exigent circumstance was present and it definitely was not hot pursuit, because more than a half an hour to an hour had elapsed before the time the first sighting the first sighting the sightings of these Defendants by the police officer. So it wasn’t hot pursuit.
The defense attorney noted that the officers entered the house before they sent for a warrant.
At issue is whether Officer Perkins’ testimony is sufficient to determine whether probable cause and exigent circumstances existed for the officers to enter the residence and seize the weapons before acquiring the search warrant.

Standard of Review of a Motion to Suppress

The appellate court reviews the district court’s findings of fact on a motion to suppress under a clearly erroneous standard, and will review the district court’s ultimate determination of Fourth Amendment reasonableness de novo. U.S. v. Seals, 987 F.2d 1102 (5 Cir.1993), cert, denied, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). On mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discre *25 tion standard, but reviews conclusions to be drawn from those facts de novo. United States v. O’Keefe, 128 F.3d 885 (5 Cir. 1997), cert. denied, 523 U.S. 1078, 118 |4S.Ct. 1525, 140 L.Ed.2d 676 (1998). An appellate court reviews the district court’s determinations of reasonable suspicion and probable cause de novo. U.S. v. Green, 111 F.3d 515 (7 Cir.1997), cert, denied sub nom. Green v. U.S., 522 U.S. 973,118 S.Ct. 427, 139 L.Ed.2d 328 (1997). Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. Maryland Cas. Co. v. Dixie Ins. Co., 622 So.2d 698 (La.App. 1 Cir.1993), writ denied 629 So.2d 1138 (La.1993).

Probable Cause to Arrest

La.C.Cr.P. art. 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor, it must be made immediately or in close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;
The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate basis for the arrest of a person. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179. It is not a prerequisite for the existence of probable cause to make an arrest that the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances. State v. Gates, 24,995 (La. App. 2 Cir. 1/19/94), 630 So.2d 1345, writ denied sub nom. Gates v. Jones, 94-0640 (La.6/17/94), 638 So.2d 1091.
15An arresting officer need only have a reasonable basis for believing that his information and conclusions are correct. Rodriguez v. Deen, 33,308 (La.App. 2 Cir. 5/10/00), 759 So.2d 1032, writ denied, 2000-1414 (La.6/23/00), 765 So.2d 1049. For an arrest, the law does not require that “reasonable cause to believe” be established by evidence sufficient to convict; the arresting officer need not be convinced beyond a reasonable doubt of the arrested person’s guilt. La.C.Cr.P. art. 213; State v. Weinberg, 364 So.2d 964 (La.1978). The standard of reasonable cause to believe is a lesser degree of proof than beyond a reasonable doubt, determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience. Id.
Probable cause for an arrest must be judged by the probabilities and practical considerations of everyday life in which average people, and particularly average police officers, can be expected to act. State v. Franklin, 598 So.2d 1147 (La.App. 1 Cir.1992), writ denied, 604 So.2d 1317 (La.1992). The reputation of the area is an articulable fact upon which a police officer may legitimately rely. Id. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or a preponderance standard demands. State v. Green, 98-1021 (La.App. 4 Cir. 12/22/99), 750 So.2d 343, writ denied, 96-2610 *26 (La.6/20/97), 695 So.2d 1348. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. Deference should be given to the experience of the police who were present at the time of the incident. Id.
Police are not required to arrest an individual at the point at which probable cause for arrest arises. State v. Coleman, 412 So.2d 532 (La.1982). An arrest occurs when the circumstances indicate an intent to effectuate an extended restraint |fion the liberty of an accused, rather than at the precise moment that the officer tells an accused that he is under arrest. State v. Jones, 31-613 (La.App. 2 Cir. 4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/1/99) 748 So.2d 434.
First degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a fireman or peace officer (including a police officer) engaged in the performance of his lawful duties. La. R.S. 14:30(A)(2, 6); State v. Girod, 94-853 (La.App. 5 Cir. 3/15/95), 653 So.2d 664, habeas corpus dismissed, affirmed sub nom. Magee v. Cain, 253 F.3d 702 (5 Cir. (La.) 4/11/01). The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741, 746 (La. 1982); State v. Strother, 362 So.2d 508, 509 (La.1978); State v. Butler, 322 So.2d 189 (La.1975). The specific criminal intent required does not have to be proved as fact, but may be inferred from the circumstances and actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981). The discharge of a firearm at close range and aimed at a person is indicative of specific intent to kill or inflict great bodily harm upon that person, as required for a first-degree murder conviction. State v. Gay, 29,434 (La.App. 2 Cir. 6/18/97), 697 So.2d 642.
In Girod, supra, 94-853, p. 2, 653 So.2d at 666, the Fifth Circuit stated:
On August 22, 1993, at approximately 11:30 p.m., Officer Stephen Newitt was dispatched to Terrytown, an area of Jefferson Parish, to investigate reports of illegal gunshots being fired. Once there, the officer saw a vehicle, a two-door Cutlass type, which he slowly approached. The vehicle sped off. Newitt followed, and the vehicle stopped a short distance away. As Newitt began to exit his unit, a man, later identified as defendant Girod, left the stopped vehicle. The officer heard a loud boom and saw a large flash. He testified that he had no doubt that the blast came from the area where Girod was standing. Then, he observed Girod throw something behind his back. The officer took position behind an lyppen door of his vehicle and called for assistance. Newitt saw an assault weapon come out of the passenger door and slide a few feet toward Girod. No attempt was made by Girod to pick up this weapon. Two men remained in the vehicle; Magee, who was seated on the passenger side of the back seat, and Craig Williams, who was the driver. The officer ordered defendant Girod to lie on the ground and ordered Magee and Williams to exit the vehicle. At this point, three backup units arrived and all the men were arrested. The vehicle was searched and two more weapons were found inside the vehicle. As a result of a search, a shotgun was found in the area where Newitt had seen Girod throw an item. Additionally, the front of Newitt’s police unit was damaged by gunfire. The officer was not injured.
The appellate court noted:
*27 ... As to Girod’s conviction, defense counsel’s brief contends that the jury failed to exclude a reasonable hypothesis of innocence, particularly that the shotgun fired accidentally. Defendant Girod argues that, given his closeness to the officer, had he been pointing a shotgun in the officer’s direction, the officer would have been injured by the shot. Girod further argues that the fact that the officer was not injured proves a lack of intent to kill on his part. The State contends that Girod’s intent to kill Officer Newitt was shown by [94-853 La. App. 5 Cir. 5, [653 So.2d 664]] the fact that Girod shot toward the officer with a double-barrelled shotgun at a distance of only ten feet.
Id, 94-853, pp. 4-5, 653 So.2d at 667.
The trial court found Girod guilty as charged of attempted first degree murder of a police officer. The appellate court found sufficient evidence for Girod’s conviction.
The Fifth Circuit held:
... From the totality of the evidence submitted by the prosecution, a rational trier of fact could have found that Girod was guilty of attempted first degree murder. The State had to show that defendant Girod specifically intended to kill the officer. Herein, the jury obviously chose to believe the officer’s testimony instead of defendants’ testimony. Accepting the officer’s testimony as true, there is sufficient circumstantial evidence to prove that Girod had the requisite 1 Sspecific intent. " A blast, which was obviously gunfire, came from the area where Girod was standing toward the police unit from which the officer was exiting. This gunfire caused damage to the officer’s vehicle consistent with shots fired from a shotgun. Furthermore, immediately after the blast, the officer saw Girod throw “something” behind him. After a search of that area, a shotgun was found.
Id, 94-853 p. 7, 653 So.2d at 668.
In the above case, the defendant Girod was approximately ten feet away from the police officer when the shots occurred. In the present case, the officers were in uniform. Officer Perkins stated: “They were firing straight across Galvez, not up in the air.” When the defendants aimed and fired directly at the police in close proximity from across the street, the officers had probable cause to arrest the defendants for attempted murder of police officers. Under the totality of circumstances, it was reasonable for the officers to believe that both defendants had committed a crime of attempted murder of police officers. Based on the defendants’ records, probable cause existed as to both defendants for violation of La. R.S. 14:95.1, possession of a firearm by a convicted felon.
Pursuant to La.C.Cr.P. art. 213, the officers had probable cause to arrest the defendants. To legally enter the apartment and secure it while waiting for a warrant, the officers required exigent circumstances as well as probable cause.

Exigent Circumstances

In State v. Johnson, 617 So.2d 18, 20 (La.App. 4 Cir.1993), this court discussed the applicability of the “exigent circumstances” warrant exception:
... Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. U.S. Constitution, Amendment 4; Louisiana Constitution Article 1 § 5; C.Cr.P. Article 162; State v. Brady, 585 So.2d 524 (La.1991). A recognized exception to the warrant requirement for entry into a building is a quick search of the premises to determine the 1 [¡presence of persons in need, *28 the presence of a perpetrator who might still remain on the premises, or to prevent the destruction of evidence. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409 [83 L.Ed.2d 246] (1984); United States v. Rubin, 474 F.2d 262 (3rd Cir.1974 [1973]) cert, denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writs denied, 531 So.2d 764 (1988).
Probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment of the United States Constitution and the Louisiana Constitution, Article 1 § 5.
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320 (La.1979). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a “protected” area that without those exceptional circumstances would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. [Emphasis added.]
State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
See also State v. Page, 95-2401, p. 10, (La.App. 4 Cir. 8/21/96), 680 So.2d 700, '709, writ denied 96-2352 (La.2/21/97), 688 So.2d 522; State v. Tate, 623 So.2d 908 (La.App. 4 Cir.1993), writ denied 629 So.2d 1126, and writ denied 629 So.2d 1140 (La. 1993).
The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,-811) Dollars in U.S. Currency v. Kowal-ski, 810 F.Supp. 738 (W.D.La.1993).
In the present case, where rifles were involved in the Calliope project, and the subjects shot at the uniformed police officers, exigent circumstances existed for the detectives to enter and secure the apartment. Officer Perkins | intestified that the armed defendants shot their assault rifles at the officers who were in police uniforms. These facts provided a great risk for the officers, and exigent circumstances existed. Even though a half hour may have passed by the time a tip was received, exigent circumstances still existed under the facts in this case under the totality of circumstances. The officers did not enter the apartment randomly but based on a tip from a concerned citizen that focused on the apartment at 1408 South Miro in the project. Upon entering the apartment, Officer Perkins immediately identified the defendants as the perpetrators. To avoid a possible violent confrontation that could cause injury to the officers and the public, the officers legally could search for the weapons prior to obtaining a search warrant for their protection and the protection of others living in the project.

Inevitable Discovery

The officers inevitably would have discovered the evidence on lawful grounds. See State v. Ballon, 97-2036 (La.App. 4 Cir. 11/12/97), 703 So.2d 130, writ not considered,97-3114 (La.2/13/98), 706 So.2d 987. As this Court stated in State v. Knapper, 626 So.2d 395, 396 (La.App. 4 Cir.1993), writ denied, 93-2950 (La.1/28/94), 630 So.2d 798:
In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted the “inevitable discovery” doctrine, holding that evidence found as a result of a violation of a defendant’s constitutional *29 rights, would be admissible “[I]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered.” The so-called “inevitable discovery doctrine” has been followed by Louisiana courts. State v. Nelson, 459 So.2d 510 (La.1984), cert, den., Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Clark, 499 So.2d 332 (La.App. 4 Cir.1986).
__LyIn the present case, even if the officers had seized the weapons from the defendants before obtaining the warrant, inevitably the police would have found the evidence in a lawful search of the apartment. Before entering the apartment, the detectives had probable cause to arrest the defendants, and exigent circumstances existed so that they could enter and secure the apartment. In entering the apartment, Officer Perkins immediately recognized the defendants, which supported the officers’ belief that weapons were present. The officers legally could secure the apartment by seizing the weapons under these circumstances.
Accordingly, the stay order is rescinded. The ruling of the trial court is reversed, the defendants’ motion to suppress is denied, and the case is remanded for further proceedings.

WRIT GRANTED; STAY ORDER RESCINDED; REVERSED & REMANDED.

PLOTKIN, J., dissenting.

. The events occurred at approximately 11:40 p.m. according to the State’s brief.

. The officers entered apartment C according to the State’s brief.