# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00343-SCT

*CLIFFORD MICHAEL LOCKHART*

*v.*

*STELLA PAYTON LOCKHART*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/2019 |
| TRIAL JUDGE: | HON. SHEILA HAVARD SMALLWOOD |
| TRIAL COURT ATTORNEYS: | CYNTHIA A. RE |
| | CAROL ANN BUSTIN |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CAROL ANN BUSTIN |
| ATTORNEY FOR APPELLEE: | STELLA PAYTON (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 09/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Michael Lockhart appeals the Chancery Court of Forrest County's Opinion and Final

Judgment entered in July 2019 (the 2019 Order) purporting to clarify the court's previous

2018 Findings of Fact, Conclusions of Law and Final Judgment (the 2018 Order) equitably

distributing property between Lockhart and his ex-wife, Stella Payton.  Lockhart also appeals

the chancery court's Order Denying Post Trial Motion entered in February 2020.  In doing

so, Lockhart asserts that the chancery court erred by modifying the court's property division

ruling from its 2018 Order, by assigning values to property identified in the 2018 Order, in

its determination of "proceeds" related to certain businesses owned by Lockhart, by finding Lockhart in contempt, by failing to penalize Payton's contempt and allowing Payton equitable relief, by failing to assign rental income to Lockhart for two marital rental properties, by failing to provide Lockhart a way to retrieve his personal property from the marital home and by denying Lockhart's motion to recuse. Since each of Lockhart's eight assignments of error either lack merit or are procedurally barred on appeal, we affirm the decision of the chancery court.

## FACTS AND PROCEDURAL HISTORY

### I.    The 2018 Order

¶2.    In May 2018, following the 2017 divorce of Lockhart and Payton, the Chancery Court of Forrest County entered the 2018 Order setting forth the equitable distribution of property between Lockhart and Payton as follows:

> The court determines based on **Hemsley**,[1] and **Ferguson**,[2] that the property shall be divided as follows:
>
> The marital home, located at 128 Pinehills Drive shall be sold and the proceeds divided equally between the parties. [Payton] will be entitled to one-half (½) of the equity in the Gamble Street and Edwards Street properties. Likewise, [Lockhart] will be entitled to one-half (½) of the equity in the properties located on Dearborn, and Palmetto. The Property located at Willis Avenue shall be sold, with the proceeds to be divided equally.
>
> [Payton] shall be entitled to one-half (½) of the proceeds earned by [Lockhart] through his business Lockhart Construction and Lockhart-Gray Development that was generated th[r]ough August of 2017. [Lockhart] shall also be entitled to one-half (½) of the proceeds generated through the efforts

---

[1] **Hemsley v. Hemsley**, 639 So. 2d 909 (Miss. 1994).

[2] **Ferguson v. Ferguson**, 639 So. 2d 921 (Miss. 1994).

2

of [Payton] in her business, Making People Priority and the Chayil Woman th[r]ough August of 2017. Any future proceeds earned through the writings, products, or other ventures associated with Making People Priority shall be the exclusive ownership of [Payton]. [Lockhart] is awarded the exclusive ownership, use and possession of his interest in Annointed Word Ministries.

[Lockhart] will get the 2003 Corvette; 2003 Dodge SQ3; 2008 Chevrolet Van; 2003 Ram 350; the 4-wheeler; the Generac Generator; and the 4200 PSA Power Washer. He will also be entitled to retrieve all of his personal possessions from the marital home.

[Payton] will get the 2008 Dodge MGN 4W; 2003 Mercedes 320; 1999 Mercedes 320 DL; Honda Motorcycle; the Troybuilt Generator; and the 6-gallon Compressor.

¶3. Payton then filed her Motion for Reconsideration and/or Clarification, Alternatively Motion for Partition of Property and Notice of Hearing, asserting that the court in its 2018 Order failed to consider both Payton's emotional attachment to the martial home and Lockhart's alleged failure to make mortgage payments pursuant to court orders. Further, Payton asserted that the equitable distribution in the 2018 Order failed to define "proceeds" with respect to businesses owned by Lockhart and, therefore, requested that the court determine such amounts. Moreover, Payton requested that a "newly discovered contract that was signed by Lockhart Construction on August 9, 2018 for the sum of $285,000.00 be included in the Lockhart Construction proceeds," that she be awarded the marital home and that all other assets be equitably divided.

¶4. In the alternative, Payton requested partition of all marital real property under Mississippi Code Section 11-21-11 (Rev. 2019), arguing that a sale of the marital property would promote the parties' interests. In response, Lockhart asserted that he too has an emotional attachment to the marital home and that no further determinations with regard to

3

the equitable distributions beyond the percentage distributions in the 2018 Order were required. Noting that equitable distribution as required by law was made in the case and finding that no new or compelling evidence warranting a change to the 2018 Order was presented, the court denied Payton's motion in June 2018. Neither party appealed the 2018 Order.

## II.    Contempt Proceedings

¶5.    In August 2018, Payton filed her Complaint for Citation of Contempt and Complaint for Permanent Order of Protection, requesting that Lockhart be held in contempt for willful failure to abide by the court's 2018 Order. Payton specifically alleged that Lockhart failed to make mortgage payments for the marital residence and entered the marital residence in violation of previous court orders. Further, Payton alleged that Lockhart harassed Payton and her son, harassed a contractor hired by Payton and changed the locks to the marital home. Finally, Payton alleged that Lockhart took items not awarded to him in the 2018 Order, failed to turn over items awarded to Payton, failed to remove a vehicle awarded to him and failed to place for sale real property in his possession.

¶6.    In his answer, Lockhart asserted "unclean hands" as an affirmative defense, arguing that Payton should be estopped from obtaining the relief sought in her complaint for contempt. Further, in addition to moving to dismiss Payton's contempt complaint under Mississippi Rule of Civil Procedure 12(b), Lockhart argued that the temporary orders forming the basis for relief for portions of Payton's contempt complaint were superseded by the court's 2018 Order. Lockhart also asserted a counterclaim for contempt against Payton,

4

citing her refusal to comply with the court's 2018 Order by refusing to cooperate with the sale of the marital residence, failure to relinquish rental income, threatening Lockhart and refusing Lockhart access to his real property. Lockhart therefore requested Payton's removal from the marital home and appointment of a special master.

¶7.	Payton also filed her Motion for Emergency Ex Parte Order and Notice of Hearing in August 2018 requesting a temporary restraining order against Lockhart, citing Lockhart's multiple alleged unauthorized entries to the marital home. In its Emergency Temporary Restraining Order, the court found that Lockhart did enter the marital home since the 2018 Order on two separate occasions and ordered continued sole and exclusive use and possession of the marital home and rental properties located on Palmetto Street and Dearborn Street to Payton. The court also ordered that Lockhart not enter any of the three premises, prevented Payton and Lockhart from contacting each other except through their attorneys and prohibited Payton and Lockhart from going within one hundred yards of each other.

## III.	Report of the Special Master

¶8.	In October 2018, the court appointed Steve Headrick to serve as special master with directions to investigate, locate and take custody of assets listed in the 2018 Order, inspect the marital home, make a recommendation on equitable division of the assets and employ a realtor to carry out the 2018 Order. The court also extended the provisions of the temporary restraining order indefinitely and ordered Payton's continued use and possession of the marital home and Palmetto Street and Dearborn Street rental properties, but the court did allow Lockhart access to the marital home and the properties at Palmetto Street and Dearborn

5

Street as arranged by Headrick. Finally, the court restrained Payton from Lockhart's properties on Gamble Street, Edwards Street and Willis Avenue.

¶9. In his preliminary report, Headrick suggested that, notwithstanding the 2018 Order's lack of explicit command to sell the properties located on Dearborn Street, Palmetto Street, Gamble Street and Edwards Street, all real property identified in the 2018 Order should be sold. Headrick also recommended that he be allowed to choose a realtor for the property sales. Further, Headrick recommended the services of an accountant or other professional to aid in valuation of the various businesses identified in the 2018 Order. Moreover, Headrick discussed the location and value of vehicles and other personal property identified in the 2018 Order, noting a need for additional information from each of the parties.

¶10. In November 2018, Headrick filed his supplemental report. Headrick reiterated his previous recommendation that he engage a realtor to sell all real property identified in the 2018 Order and divide the proceeds evenly between Lockhart and Payton and, more specifically, that each property be sold "as is" and that "[i]f a property is 'upside down' and more is owed on it than it is worth, then it seems fair that both parties share equally that burden as they are equally sharing in the benefits of the dividing of this marital real property." Further, Headrick recommended that Payton be allowed to stay at the marital residence during efforts to sell, be required to cooperate with the sale of the property and be allowed to keep the items remaining at the marital home. As for the proceeds awarded to each party from their respective businesses, Headrick again recommended forensic accounting to determine the proceeds attributable to each business. Headrick reviewed the

results of his investigation into the location of certain vehicles and other items of personal property and also recommended that Lockhart remove a bread delivery truck from the marital residence and pay Payton $190—the amount Lockhart received for a vehicle belonging to Payton that Lockhart junked. Finally, Headrick requested either to be dismissed as special master or to have his role limited to securing a realtor for the sale of the real property.

**IV.    The 2019 Order**

¶11.    In July 2019, following trial on Payton's contempt complaint, the chancery court entered the 2019 Order. Noting its inability to modify the 2018 Order's identification and division of marital assets, the court found that the 2018 Order was vague and ambiguous and that, as a result, clarification was needed. The court then addressed each piece of property identified in the 2018 Order.

*A.    Property Division*

1.    Pinehills Drive Marital Home

¶12.    The chancery court noted that while the 2018 Order directed that the marital home be sold and the proceeds divided equally between the parties, the 2018 Order neither valued the marital home nor determined respective amounts of equity in the property. Without appraisals in evidence from trial, the court assigned a value of $228,000 to the marital home on Pinehills Drive based on Payton's testimony at trial and found that the mortgage balance was $150,000 based on both parties' financial disclosure statements, leaving a total of $78,000 in equity in the home.

2.    Gamble Street and Edwards Street Properties

¶13.   The court recognized that the 2018 Order provided one-half equity to Payton in the Gamble Street and Edwards Street properties but noted that the 2018 Order failed to identify whether the division would be accomplished through sale, deed or payment.  Further, no value was placed on the properties in the 2018 Order.  Therefore, based on a Forrest County property link for the Gamble Street property admitted at trial and the testimony of Lance Reid, Forrest County's deputy chancery clerk, the court assigned a value of $29,890 to the Gamble Street property.  With no proof of mortgage presented, the court found that Payton "is entitled to the sum of $14,945 representing her one-half interest in the Gamble Street property."

¶14.   Next, based on a Forrest County property link for the Edwards Street property admitted at trial, the court determined the value of the Edwards Street property was $50,060.  Though it heard testimony from a previous business partner of Lockhart regarding a mortgage on the Edwards Street property and Lockhart's testimony that there was a lien on the property, the court noted that no documentary proof of a lien was presented and, therefore, Payton was "entitled to $25,030.00 representing her one-half interest in the Edwards Street property."

### 3.    Dearborn Street and Palmetto Street Properties

¶15.   Reviewing the 2018 Order, the court noted that while the court awarded one-half equity in the Dearborn Street and Palmetto Street properties, it provided no further explanation regarding values or the method of division.  Therefore, based on a Forrest County property link for the Dearborn Street property admitted at trial, the court determined

8

that the Dearborn Street property's value was $32,800. Based on Payton's financial disclosure, the court also determined there was a mortgage balance of $21,000 on the property, leaving a total equity in the property of $11,800 "for which [Lockhart] is entitled to $5,900.00 representing his one-half interest in the property."

¶16. Moreover, based on a Forrest County property link for the Palmetto Street property admitted at trial, the court determined that the Palmetto Street property had a value of $32,140. Additionally, the court determined that a mortgage encumbered the property with a balance of $41,587, leaving a total negative equity of -$9,447. The court therefore found that half of the negative equity in the Palmetto Street property equaled -$4,723.50.

### 4. Willis Avenue Property

¶17. The court, while recognizing the 2018 Order's command that the Willis Avenue property be sold with proceeds divided equally, noted that at trial Lockhart testified that the Willis Avenue property was previously foreclosed. Further, Reid testified that Lockhart no longer held title to the Willis Avenue property and, therefore, the directions of the 2018 Order with respect to the Willis Avenue property could not be effectuated.

### 5. Other Properties

¶18. The court, citing the 2018 Order, also recognized that eight pieces of real property were outside of the marital estate as a result of forfeiture or for other reasons.

### 6. Lockhart Construction and Lockhart-Gray Development

¶19. Moving to the 2018 Order's award to Payton of "one-half of the proceeds earned by [Lockhart] through his businesses Lockhart Construction and Lockhart-Gray Development

9

that was generated through August of 2017," the court found that the 2018 Order was "silent as to a beginning date and ambiguous as to what is considered 'proceeds.'" Therefore, "[f]or the purposes of clarification," the chancery court "deem[ed] 'proceeds' to be synonymous with 'profit[,]'" with "profit" equaling "the amount of gross receipts minus the costs of goods sold." The court then made the following calculation:

> Therefore, in reviewing [Lockhart's] 2017 tax returns admitted as Trial Exhibit 6, the gross receipts of his business were $603,356.00 and the cost of goods sold was $558,343.00 resulting in a gross income of $45,013.00. Since the *Opinion and Final Judgment* awarded [Payton] one-half of the "proceeds" through August of 2017, the Court has averaged $45,013.00 over a twelve-month span and multiplied that figure by 8 months. This results in a figure equaling $30,008.00. [Payton] is therefore entitled to $15,004.00 representing her one-half interest in Lockhart Construction and Lockhart-Gray Development.

### 7. Making People Priority and The Chayil Woman

¶20. Next, the court addressed the 2018 Order's award to Lockhart of one-half of the proceeds of Payton's businesses, Making People Priority and The Chayil Woman, through August 2017. The court provided that, "[a]ccording to Trial Exhibit 2, [Payton's] 2017 taxes reflect a $13,291.00 business loss on her Schedule C. Therefore, there are no 'proceeds' in which to divide."

### 8. The 2003 Corvette, 2003 Dodge SQ3, 2008 Chevrolet Van, 2003 Ram 350, 4-Wheeler, Generac Generator, 4200 Power Washer and Personal Possessions from the Marital Home

¶21. The court made no additional findings regarding the award of the 2003 Corvette, 2003 Dodge SQ3, 2008 Chevrolet van, 2003 Ram 350, 4-Wheeler, Generac generator, 4200 power washer and personal possessions from the marital home based on Headrick's claim that no

10

issues remain regarding these items.

9. 2008 Dodge MGN 4W, 2003 Mercedes 320, 1999 Mercedes 329 DL, Honda Motorcycle, Troy-Bilt Generator and 6-Gallon Air Compressor

¶22. The court recognized the 2018 Order's award to Payton of the 2008 Dodge MGN 4W, 2003 Mercedes 320, 1999 Mercedes 329 DL, Honda motorcycle, Troy-Bilt generator and 6-gallon air compressor. Further, the court provided that if issues in transferring title from Lockhart to Payton of the Honda motorcycle continued, then Headrick would retain authority to transfer ownership from Lockhart to Payton.

10. Other Personal Property

¶23. After noting the 2018 Order's silence on ownership of other personal property, its provision that "[Lockhart] was to retrieve 'all of his personal possessions from the marital home'" and that the 2018 Order did not address the contested ownership of a piano, the court declined to rule on ownership of the piano and ordered that "each party shall have use, ownership and possession of all items of personal property currently in their possession with the exception of the 2008 Dodge vehicle listed in paragraph [7]."

B. Contempt

¶24. Ruling on Payton's contempt complaint and Lockhart's counterclaim for contempt, the court first held that it lacked jurisdiction to rule on the issue of contempt related to Lockhart's alleged failure to make mortgage payments "since the failure to pay mortgage payments was not addressed in the *Final Judgment* and the matter was not appealed." Second, the court determined that since the 2018 Order "allowed, though vaguely, for [Lockhart] to retrieve his personal items[,]" the home was technically jointly titled to each

11

party and, "[t]herefore, there can be no finding of contempt." The court did hold, however, that its temporary restraining order would remain in effect.

¶25. Third, the court addressed Payton's allegations that Lockhart refused to turn over money, items and vehicles awarded to her in the 2018 Order. Finding that Lockhart made no effort to pay any sums due Payton under the 2018 Order and failed to transfer possession of two vehicles as ordered, the court opined that "[t]here is a clear failure on [Lockhart]'s part to comply with the provisions set forth in the Court's prior ruling requiring a finding of contempt." The court then calculated the total amount due Payton and determined that Lockhart owed Payton a total of $55,169. Further, the court ordered that "within ten days of the entry of this *Opinion* . . . , [Lockhart] shall deliver possession, title and ownership of the 2008 Dodge MGN 4W to the office of his attorney, Carol Ann Bustin. Once delivered, his attorney shall notify counsel for Stella Payton and arrange for her to retrieve the vehicle."

¶26. Fourth, with respect to Lockhart's counterclaim for contempt, the court found that "[Payton] has made no effort to sell the marital property as directed in the *Final Judgment*." Therefore, the court found Payton in contempt for failure to comply with the 2018 Order. And pursuant to the 2018 Order's award to Lockhart of one-half interest in the Dearborn and Palmetto properties, the court found that Payton owes Lockhart $1,176.50.

    *C.    Attorney Fees*

¶27. Finding both parties in contempt and citing the doctrine of "unclean hands," the court declined to award attorney fees to either party.

    *D.    Final Award*

12

¶28.    Based on the court's assignment of values to property identified in the 2018 Order, the court ordered that "[Lockhart] shall pay [Payton] the sum of $53,992.50 within thirty (30) days of the entry of this *Opinion and Final Judgment* representing her one-half interest in the properties/companies of [Lockhart]. This figure includes an offset of $1,176.50 that [Payton] owes [Lockhart] for his interest in her properties."  The court also ordered that Payton had thirty days "from the date of payment to vacate the home" and appointed a realtor to market the marital home.  Further, the court provided that once the home sold, each party would share equally in the profit from the sale, but Payton would receive credit for mortgage payments made from May 2018 until the home is sold.

¶29.    The court also provided that if Lockhart failed to pay Payton $53,992.50 within thirty days, he would forfeit his one-half interest in the equity of the marital home to satisfy the amount due to Payton, in which case he would be given credit for his one-half interest of the equity of $39,000.  In that event, Payton would be entitled to a judgment against Lockhart in the amount of $14,992.50.  Further, if Lockhart failed to pay, the court provided that Headrick shall serve as special commissioner to execute a special commissioner's deed transferring Lockhart's interest in the marital home to Payton.

¶30.    In July 2019, Lockhart filed his Motion to Reconsider, arguing that neither party should be able to remain in the marital home, that the court should have relied upon his, rather than Payton's, testimony regarding the value of the marital home and that a sale of the properties is the only way to ascertain actual market value.  Moreover, Lockhart argued that the court did not base its valuations on reliable evidence and ignored relevant evidence

involving encumbrances on pieces of real property. Lockhart additionally argued that the court erred by using different valuation methods to determine proceeds from his businesses, on the one hand, and Payton's businesses, on the other. Lockhart also argued that he would be unable to turn over the 2008 Dodge MGN 4W since that vehicle is not operational, that the court erred by finding him in contempt for failure to turn over money and property and that the court failed to address income he should receive from the Dearborn Street and Palmetto Street properties. Morever, Lockhart argued that he should be given credit for mortgage payments made on the marital property mortgage, that it would be impossible for him to pay $53,992.50 to Payton within thirty days, that the court failed to address Lockhart's personal property and that the temporary restraining order should not remain in effect until further order of the court.

¶31. Lockhart later filed a Supplement to Motion to Reconsider that referenced a notice of lien filed on the Edwards Street property by Joe Gray and also alleged that Headrick was provided the promissory note indicating Lockhart's and Gray's indebtedness for the purchase of Edwards Street in the amount of $37,900. Lockhart argued that the court should have utilized the notice of lien in its valuation of Edwards Street. Furthermore, Lockhart argued that Payton should not have benefitted from mortgage payment credits that he argues were the result of Payton's continued contempt causing delay of the sale of the marital home.

¶32. On February 26, 2020, the court entered its Order Denying Post Trial Motion. In the order, the court held that Lockhart failed to meet the standard under Mississippi Rule of Civil Procedure 59(e) for a motion to alter or amend judgment when he failed to show new

14

evidence or an intervening change of law. Moreover, the court noted that the notice of lien and promissory note referenced in Lockhart's Supplement to Motion to Reconsider were not new evidence but rather were available prior to entry of the 2019 Order. Finally, the court held that there was no clear error of law in the 2019 Order. On March 27, 2020, Lockhart filed his Notice of Appeal, identifying as the subject of his appeal the "Opinion And Final Judgment entered in this case on July 31, 2019, and the subsequent Order Denying Post Trial Motion entered in this case on February 26, 2020, and the entire order of the Court."

## V. Recusal Proceedings

¶33. Lockhart also filed his Motion for Recusal in August 2019, arguing that Chancellor Smallwood should recuse from the proceedings since Payton's attorney's firm hosted a fundraising event for Chancellor Smallwood and because Chancellor Smallwood once worked for the firm representing Payton, all of which Lockhart argued showed bias in favor of, and partiality toward, Payton. Payton filed a response in opposition incorporating a blanket denial of Lockhart's allegations.

¶34. In September 2019, the court denied Lockhart's Motion to Recuse. In its order, the court noted that Payton's attorney's firm was not a major donor and that Lockhart failed to present evidence sufficient to "cast doubt on the impartiality of this Court as reflected in Canon 3(E) of the Code of Judicial Conduct" and that "the evidence presented did not sufficiently meet the standard set forth in Rule 1.11 of the Uniform Chancery Rules for recusal." Further, the court provided that Lockhart "has thirty (30) days from the entry of this *Order Denying Motion to Recuse* to appeal this decision in accordance with M.R.A.P.

48 B."

¶35. In December 2019, a three-Justice panel of this Court entered its order denying Lockhart's Petition for Recusal and Mandamus. Subsequently, in February 2020, the Court also denied Lockhart's Motion to Reconsider Order on Recusal filed pursuant to Mississippi Rule of Appellate Procedure 27(h).

## ISSUES

¶36. Lockhart identifies eight issues on appeal: (I) whether the court erred by changing the property division ruling from the divorce final judgment; (II) whether the court erred by assignment of values to parcels of real property; (III) whether the court erred in its determination of "proceeds"; (IV) whether the court erred by finding Lockhart in contempt; (V) whether the court erred by not penalizing Payton's admitted contempt and allowing Payton equitable relief despite her willful contempt; (VI) whether the court erred by failing to assign any rental income to Lockhart from the Dearborn and Palmetto properties; (VII) whether the court erred by failing to provide any provision for Lockhart to retrieve his personal property; and (VIII) whether the court erred by denying Lockhart's motion to recuse.

## STANDARD OF REVIEW

¶37. "This Court will not disturb the findings of a chancellor in domestic relations matters unless the chancellor's decision was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Lewis v. Pagel*, 172 So. 3d 162, 172 (Miss. 2015) (citing *Carney v. Carney*, 112 So. 3d 435, 437-38 (Miss. 2013)). Moreover, "[c]hancellors are afforded

wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Id.* (internal quotation marks omitted) (quoting *Gutierrez v. Gutierrez*, 153 So. 3d 703, 707 (Miss. 2014))).

¶38. Further, "[t]his Court reviews a judge's refusal to recuse himself using the manifest error standard." *Kinney v. S. Miss. Planning and Dev. Dist., Inc.*, 202 So. 3d 187, 194 (Miss. 2016) (internal quotation marks omitted) (quoting *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997)). Finally, the Court reviews questions of law de novo. *Lewis*, 172 So. 3d at 172 (citing *Gutierrez*, 153 So. 3d at 707).

## DISCUSSION

### I. Whether the court erred by changing the property division ruling from the 2018 Order.

¶39. Lockhart argues that by assigning value to all of the properties, ordering payment by Lockhart to Payton within thirty days for her interest in the Gamble Street and Edwards Street properties, requiring payment by Lockhart to maintain equity in the marital residence and awarding credit to Payton for her mortgage payments since the divorce, the court exceeded its authority by modifying the 2018 Order with respect to identification and division of assets. Since the chancery court clarified, without modifying, the 2018 Order, we affirm the decision of the chancery court.

¶40. Lockhart cites *East v. East*, 493 So. 2d 927 (Miss. 1986), for the proposition that "[t]he Lower Court did not have the authority to modify the prior Chancellor's ruling with respect to the identification and division of the assets." The chancery court referenced the

limitation of its authority to modify the 2018 Order and noted that the scope of the 2019 Order was merely to clarify, rather than to modify, the provisions within the 2018 Order.

¶41. In *Lewis*, the Court provided that "an order of equitable division is a nonmodifiable judgment." *Lewis*, 172 So. 3d at 175 (citing *East*, 493 So. 2d at 931). Further, after initially classifying assets as either marital or separate property, a "chancellor must proceed with equitable distribution guided by the factors set forth in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994)." *Id.* Again, neither party appealed the 2018 Order. The 2018 Order, after classifying Lockhart's and Payton's assets as either marital or separate property, proceeded to equitably distribute the property based on the factors set forth in *Ferguson* and *Hemsley*. The 2019 Order, contrary to Lockhart's assertion, did not "modify the [2018 Order] with respect to the identification and division of assets"; instead, the 2019 Order explicitly relied on the court's previous identification of assets as marital or separate.

¶42. Lockhart also argues that the court "created a previously non-existent scenario by which [Payton] remains in the Pinehills marital residence permanently." Further, Lockhart argues that by ordering payment within thirty days to Payton and conditioning his continued claim to equity in the marital home on such payment and by providing Payton with a credit for mortgage payments since the divorce, the 2019 Order changed the 2018 Order. Additionally, Lockhart asserts that the 2019 Order created an impossible financial requirement for Lockhart to maintain his interest in the marital residence and by "creating a previously nonexistent condition precedent to the sale of the Pinehills marital residence." Finally, Lockhart argues that the court changed the 2018 Order by adding credit for Payton

for mortgage payments made from May 2018 until the home was sold.

¶43. Lockhart's arguments mischaracterize the 2019 Order. The 2019 Order did not allow Payton to remain in the marital home permanently. Instead, the 2019 Order explicitly provided that Payton had thirty days "from the date of payment" made by Lockhart "to vacate the home." Moreover, the 2019 Order did not create a previously nonexistent condition precedent to the sale of the marital home. Rather, the 2019 Order provided a self-effectuating sequence of events by which Lockhart either would pay Payton for her one-half equity interests in property already awarded to her in the 2018 Order within thirty days or, in lieu of payment, would be required to pay Payton a deficiency after Payton absorbed Lockhart's one-half equity in the sale of the marital home to satisfy the other amounts owed to Payton. Additionally, the 2018 Order concerned only the identification and equitable division of marital property between the parties. As a result, the court's award of credit to Payton for mortgage payments made following entry of the 2018 Order for the service of debt encumbering the marital home that each party held one-half equity in did not modify any provision in the 2018 Order.

¶44. Faced with two parties in willful contempt of the court's 2018 Order who each cited ambiguities in the 2018 Order as excuses for noncompliance, the chancery court entered an order clarifying the provisions and did not change the identification or division of marital assets. The 2019 Order served to enforce the nonmodifiable 2018 Order equitably distributing property amongst the parties. The 2019 Order effectively directed the parties as to the method in which they would each obtain the one-half interest in marital property

19

previously awarded them in the 2018 Order. Therefore, we hold that the 2019 Order did not modify the 2018 Order but, rather, clarified the methods to be used in carrying out its commands. As a result, we affirm the court's 2019 Order and the order denying Lockhart's motion to reconsider.

**II.     Whether the court erred in its assignment of values to parcels of real property.**

¶45.    Lockhart next contends that the chancery court erred in the 2019 Order by assigning values to pieces of real property when the court did not do so in the 2018 Order. According to Lockhart, the 2019 Order did not indicate that any competing evidence was weighed to determine its credibility. Further, Lockhart argues that the 2019 Order was inconsistent in its reliance on county land records in some instances and its reliance on testimony in others. Citing ***Dunaway v. Dunaway***, 749 So. 2d 1112, 1121 (Miss. Ct. App. 1999), Lockhart admits, however, that "[i]t is true that a Chancellor cannot be held in error when proof is 'less than ideal.'" Indeed, the record reflects that the proof presented by both parties with respect to value of the real property subject to the 2018 Order was far less than ideal. Lockhart also admits that the reason the court did not rely on appraisals or mortgage balance statements, rather than the testimony of the parties, was because no appraisals or mortgage balance statements were introduced into evidence.

¶46.    Further, while citing ***Johnston v. Johnston***, 722 So. 2d 453, 460-61 (Miss. 1998), along with ***Lewis v. Lewis***, 54 So. 3d 233, 239-40 (Miss. Ct. App. 2009), *aff'd in part, rev'd in part*, 54 So. 3d 216 (Miss. 2011), and ***Faerber v. Faerber***, 13 So. 3d 853, 859-60 (Miss. Ct. App. 2009), Lockhart notes that courts have been reversed when they equitably divide

20

property despite insufficient evidence or when they attempt to establish value based on incomplete evidence. Moreover, Lockhart argues that the 2019 Order fails to indicate that any evidence regarding value was weighed to determine which was the most credible and failed to take into account any testimony of the deputy clerk or Joseph Gray. Furthermore, Lockhart curiously points to the unreliability of each party's financial disclosures while at the same time recognizes, citing *Common v. Common*, 42 So. 3d 59, 63 (Miss. Ct. App. 2010), that the court may consult the financial disclosures and testimony and determine that of the two the court finds most credible. Finally, citing *Jenkins v. Jenkins*, 67 So. 3d 5, 13 (Miss. Ct. App. 2011), Lockhart contends that the best approach when no relevant evidence is provided by the parties is to omit a valuation altogether.

¶47. Lockhart's arguments ignore both the trial transcript and the language of 2019 Order. First, the trial transcript is replete with testimony from both parties regarding both the value of the properties subject to the 2018 Order as well as the existence or balance of encumbrances on those properties. The 2019 Order also indicates that the court relied on Payton's testimony to determine the value of the marital home and on the parties' financial disclosures to determine the balance on the mortgage encumbering the home. Second, the court relied on a property link for the Gamble Street property admitted at trial and the testimony of Lance Reid to assign a value to the Gamble Street property. Furthermore, no proof of a mortgage encumbering the Gamble Street property was produced at trial.

¶48. Third, based on a property link for the Edwards Street property admitted at trial and a lack of documentary evidence presented showing a lien on the Edwards Street property, the

court assigned a value to the Edwards Street property. Fourth, the court relied on a property link for the Dearborn Street property and Payton's financial disclosure to arrive at its valuation and determination as to the balance of the mortgage on the Dearborn Street property. Fifth, based on property links admitted at trial for the Palmetto Street property and Payton's financial disclosure, the court determined the value and balance of the mortgage encumbering the Palmetto Street property.

¶49. In light of the evidence clearly relied upon by the court in the 2019 Order, Lockhart's argument that an omission of value was the best route lacks merit since evidence relevant to the value and the encumbrances of each of the properties was admitted. Further, given that the court clearly indicated which evidence it relied on in the 2019 Order in its valuation of the real properties subject to the 2018 Order, we hold that the chancery court, faced with evidence before it that was far less than ideal, based its assignments of value to the properties on the best evidence it had before it, so this assignment of error is without merit.

**III.    Whether the court erred in its determination of "proceeds."**

¶50. Lockhart also asserts that the court erred in its 2019 determination of proceeds and that "proceeds" as referenced in the 2018 Order amounts to "profit," arguing that "this clarification falls short and was applied differently to the parties." Further, Lockhart contends that the court's use of August 2017—the date of divorce—as the "line of demarcation regarding the marital estate" was arbitrary without further findings.

¶51. Citing *Cuccia v. Cuccia*, 90 So. 3d 1228 (Miss. 2012), Lockhart asserts that regardless of the line of demarcation, the court must specifically make that determination. In *Cuccia*,

22

the Court held that after setting "out the specific date as the line of demarcation in classifying marital versus nonmarital property[,]" the "court must then determine which assets and liabilities are marital and nonmarital in accordance with *Ferguson* and *Hemsley*." *Cuccia*, 90 so. 3d at 1233. Lockhart's reliance on *Cuccia* is misplaced. *Cuccia* dealt with determining the status of marital property. *Id.* Here, in the 2018 Order that the parties did not appeal, the court determined that Lockhart's businesses, Lockhart Construction and Lockhart-Gray Development, were marital property and that Payton was entitled to one-half of the proceeds through August 2017. Furthermore, the 2018 Order and the 2019 Order both make clear that the "line of demarcation" was the date of divorce, so Lockhart's argument that the court failed to specifically determine the line of demarcation is without merit.

¶52. Additionally, without citing legal authority, Lockhart argues that the 2019 Order's award to him of one-half of Payton's net business loss and the award of one-half of Lockhart's gross income, rather than his net profit, was inequitable. This assignment of error is without merit and misapprehends the court's 2019 Order. In the 2019 Order, the court provided that, "[f]or the purposes of clarification, the Court deems 'proceeds' to be synonymous with 'profit[.]'" Further, the court stated that "[g]ross profit is determined by the amount of gross receipts minus the costs of goods sold." The court then made calculations as to the valuation of Lockhart's businesses based on this formula. The 2019 Order did not award Lockhart one-half of Payton's net business loss. Rather, it found that Payton's 2017 taxes admitted at trial reflected a business loss and, as a result, there were no "proceeds" to divide. Therefore, we hold that Lockhart's argument on this point lacks merit.

**IV.    Whether the court erred by finding Lockhart in contempt.**

¶53.    Lockhart additionally contends that the court erred by finding him in contempt "for his failure to pay monies owed to [Payton] for his properties and for his business 'proceeds.'" The court's finding on this issue is as follows: "[Lockhart] made no effort to pay any sums due [Payton] awarded in the *Final Judgment* nor did he transfer possession of two vehicles set forth in the Final Judgment." Further, the court opined that "[t]here is a clear failure on [Lockhart]'s part to comply with the provisions set forth in the Court's prior ruling requiring a finding of contempt."

¶54.    "The decision to hold person or entity in criminal or civil contempt . . . is a discretionary function of the trial court." ***Corp. Mgmt., Inc. v. Green Cnty.***, 23 So. 3d 454, 466 (Miss. 2009) (internal quotation marks omitted) (quoting ***In re Spencer***, 985 So. 2d 330, 337 (Miss. 2008))). Additionally, "[i]ssues of contempt are questions of law to be decided on a case-by-case basis." ***Id.*** (citing ***R.K. v. J.K.***, 946 So. 2d 764, 777 (Miss. 2007)). And in determining contempt, "a trial court due to its temporal and physical proximity to the parties 'is infinitely more competent to decide the matter.'" ***Id.*** (internal quotation mark omitted) (quoting ***R.K.***, 946 So. 2d at 777).

¶55.    Here, the chancery court exercised its discretion by finding Lockhart in civil contempt after first finding that Lockhart failed to comply with the commands of the 2018 Order, which neither party appealed. ***Id.*** ("If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil." (internal quotation marks omitted) (quoting ***In re Williamson***, 838 So. 2d

24

226, 237 (Miss. 2002))). Thus, Lockhart may be correct that the court had no evidentiary basis for a contempt finding based on his failure to pay sums due Payton since, prior to the 2019 Order, no sums were explicitly ordered to be paid by the court. Even so, the court's finding of contempt with respect to Lockhart's failure to turn over property to Payton was supported by both the language of the 2018 Order directing turnover of assets to Payton as well as the testimony of the parties and Headrick's preliminary and supplemental reports indicating that certain items of personal property had yet to be turned over to Payton. Therefore, this argument too is without merit, and the court did not manifestly err by finding Lockhart in contempt. *Id.* ("When the action is for civil contempt, the standard of review is the manifest-error rule." (citing *In re Williamson*, 838 So. 2d at 237)).

**V.    Whether the court erred by failing to penalize Payton's admitted contempt and/or by allowing Payton equitable relief in light of Payton's contempt.**

¶56.    In his fifth assignment of error, Lockhart argues that the court failed to "impose any repercussions" upon Payton despite finding her in contempt for failure to comply with the 2018 Order. Further, citing *Vincent v. Rickman*, 167 So. 3d 245, 249 (Miss. Ct. App. 2015), Lockhart argues that Payton committed willful and deliberate contempt and, as a result, has "unclean hands" and was not entitled to equitable relief. As for Payton's contempt, the court found that "[Payton] has made no effort to sell the marital property as directed in the *Final Judgment*." Thus, the court found Payton in contempt for failure to comply with the 2018 Order. Further, in light of its finding that both Lockhart and Payton were in contempt of the 2018 Order, the court applied the doctrine of "unclean hands" to prevent either party from receiving attorney fees.

25

¶57. It is unclear what exactly Lockhart suggests the court either did wrong or should have done differently. Specifically, Lockhart complains that given Payton's admitted contempt, "there must be accountability." At the same time, Lockhart argues that "[a] citation of contempt is proper when the contemnor has willfully and deliberately ignored the order of the court." Payton received a citation of contempt for willfully and deliberately ignoring the commands of the 2018 Order. Furthermore, Lockhart requested that the case be reversed and "any relief granted [Payton] stricken" in light of the 2019 Order's alleged shortcomings. Lockhart, however, has failed to point to, and the record is devoid of, any "relief granted" to Payton that has any relation to the court's findings of contempt in this case. Therefore, we hold that Lockhart's fifth assignment of error is without merit.

**VI.** **Whether the court erred by failing to assign any rental income to Lockhart from the Dearborn and Palmetto properties.**

¶58. Next, without citing any on-point legal authority, Lockhart argues that the court erred by failing to assign rental income to Lockhart from the Dearborn Street and Palmetto Street rental properties. He further argues that since he "reaped the consequences of the negative equity in the properties[,]" he "should also be able to reap the reward of rental income." The sole citation of authority in this portion of Lockhart's brief is limited to the following: "The Dearborne and Palmetto properties were deemed marital pursuant to *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994) and should be treated as such."

¶59. The Court in *Hemsley* did not address assignment of rental income, but instead built upon the Court's decision in *Ferguson* by holding that "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by

26

proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." ***Hemsley***, 639 So. 2d at 914. Therefore, ***Hemsley*** does not stand for the proposition cited by Lockhart. Since he failed to cite any other authority in support of his argument, we decline to address this assignment of error on the merits. ***Hale v. State***, 191 So. 3d 719, 724 n.1 (Miss. 2016) ("Generally, a party's failure to cite any authority in support of an argument precludes this Court from addressing that argument on appeal." (citing ***Grey v. Grey***, 638 So. 2d 488, 491 (Miss. 1994))).

**VII. Whether the court erred by failing to provide any provision for Lockhart to retrieve his personal property.**

¶60. In his seventh assignment of error, Lockhart argues that, in contrast to the 2018 Order allowing him to retrieve certain items of personal property, the 2019 Order "provides that the parties shall have ownership of personal property in their possession with no provision for further exchange." Though he cites ***Prine v. Prine***, 723 So. 2d 1236 (Miss. Ct. App. 1998), as general support for the proposition that "if a litigant does not pursue issues of personal property on appeal, there is no further remedy[,]" Lockhart does not provide a specific assertion as to how he believes the chancery court erred and further cites no legal authority showing that the court's "omission . . . to resolve issues of personal property" is reversible error. Therefore, we decline to address this issue on the merits. ***Hale***, 191 So. 3d at 724 n.1 (citing ***Grey***, 638 So. 2d at 491).

**VIII. Whether the court erred by denying Lockhart's motion to recuse.**

27

¶61. Lockhart next argues that the chancery court erred by denying his motion to recuse.[3] Uniform Chancery Court Rule 1.11, which governs motions for recusal of judges, provides in relevant part that "[a]ny party may move for recusal of a judge of the chancery court if it appears that the judge's impartially [sic] might be questioned by a reasonable person knowing all the circumstances, or for other grounds provided in the Code of Judicial Conduct or otherwise provided by law." Miss. Unif. Ch. Ct. R. 1.11. The motion should be filed either within thirty days of notification to the parties of the name of the chancellor assigned to the case "or, if it is based upon facts which could not reasonably have been known to the filing party within such time, it shall be filed within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted." *Id.*

¶62. Canon 3E of the Code of Judicial Conduct further "provides that a judge should recuse 'in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code . . . or otherwise as provided by law[.]'" ***Kinney***, 202 So. 3d at 194 (second alteration in original) (quoting Miss. Code of Jud. Conduct Canon 3E(1)). Canons 3E(1)(a) and 3E(1)(c) also provide that judges should recuse themselves when they hold personal bias or prejudice toward a party, ***id.*** (citing

---

[3] In December 2019, this Court denied Lockhart's Petition for Recusal and Mandamus. Further, this Court denied Lockhart's Motion to Reconsider our order denying his Petition for Recusal and Mandamus in February 2020. We note that this Court's denial of Lockhart's petition and subsequent motion to reconsider, however, is not *res judicata* to Lockhart's raising the same issue on appeal. *See **Kinney***, 202 So. 3d at 194 (reviewing Kinney's renewed direct appeal of a denial of a motion to recuse following denial of an appeal of the chancery court's decision pursuant to Mississippi Rule of Appellate Procedure 48B); *see also **Watson v. Watson***, 306 So. 3d 800, 806 (noting that since the Supreme Court declined review of the denial of a motion to recuse, the claim was not barred by *res judicata* (citing ***Kinney***, 202 So. 3d at 194-96)).

28

Miss. Code of Jud. Conduct Canon 3E(1)(a)), and when the judge "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." *Id.* (internal quotation marks omitted) (quoting Miss. Code of Jud. Conduct Canon 3E(1)(c)).

¶63.    The Court presumes judges are qualified and unbiased. *Id.* (quoting *Turner v. State*, 573 So. 2d 657, 678 (Miss. 1990)). To overcome the presumption, a "party must produce evidence of a reasonable doubt about the validity of the presumption." *Id.* (citing *Turner*, 573 So. 2d at 678). Reasonable doubt is present "when there is a question of whether 'a reasonable person, knowing all of the circumstances, would harbor doubts about the [judge's] impartiality.'" *Id.* (alterations in original) (quoting *Turner*, 573 So. 2d at 678). In other words, a showing of bias or that a judge is unqualified must be shown beyond a reasonable doubt to overcome the presumption. *Id.* (quoting *Hathcock v. S. Farm Bureau Cas. Ins. Co.*, 912 So. 2d 844, 848 (Miss. 2005)). Moreover, in *Jenkins v. Forrest County General Hospital*, 542 So. 2d 1180 (Miss. 1990), the Court "adopted an objective test for recusal, pursuant to which a judge is 'required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality.'" *Beyer v. Easterling*, 738 So. 2d 221, 228 (Miss. 1999) (quoting *Jenkins*, 542 So. 2d at 1181). Additionally, manifest error is the standard by which this Court reviews a judge's determination under the test in *Jenkins*. *Id.*

¶64.    For the first time on appeal, Lockhart points to the Court's decision in *Jenkins* for the proposition that while political support and for a judge and the judge's prior affiliation with

a law firm representing a party before the court are not on their own disqualifying facts, the combination of the two reasonably raises a question as to the impartiality of the judge. In *Jenkins*, the Court found that when the judge's brother was a senior partner at the law firm representing a party that was part of the medical community and when the medical community in the county assisted in the judge's election, a reasonable person with knowledge of the circumstances would be led to harbor doubts as to the judge's impartiality. *Jenkins*, 542 So. 2d at 1181. Therefore, the Court held that the judge should have recused. *Id.* at 1181-82.

¶65. Contrary to Lockhart's argument, the circumstances in this case are easily distinguishable from those in *Jenkins*. First, the judge in *Jenkins* stated publicly that the medical community was responsible for his election. *Id.* at 1180. Here, however, there is no accusation that Chancellor Smallwood made any similar statement regarding her relationship with the firm, and the court found that neither "counsel nor her firm was a major donor to the campaign." Lockhart's only evidence presented on this point was "a Facebook post touting a fish fry fundraiser." Second, unlike the judge in *Jenkins*, it was not alleged that Chancellor Smallwood was related to any attorney at the law firm representing Payton. *See Jenkins*, 542 So. 2d at 1180. Instead, the evidence presented by Lockhart showed only that Chancellor Smallwood worked for the founding partner of the firm representing Payton almost fifteen years prior to Chancellor Smallwood's appointment to the case. When viewed objectively, it is clear that the court did not commit manifest error in its finding that Lockhart failed to show beyond a reasonable doubt that Chancellor Smallwood was unqualified to

preside over the case or was biased or partial toward either party.  Therefore, we affirm the court's decision to deny Lockhart's motion to recuse.

## CONCLUSION

¶66.    Since each of Lockhart's eight assignments of error are either procedurally barred or without merit, we affirm the chancery court's 2019 Order and its order denying Lockhart's motion to reconsider.

¶67.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**